# FELIÚ *v.* NARVÁEZ.

## APPEAL from the District Court of San Juan.

### No. 97.—Decided March 4, 1907.

APPEAL—BILL OF EXCEPTIONS—STATEMENT OF FACTS—APPROVAL BY JUDGE.—. The approval by the judge of a bill of exceptions or a statement of facts should not be made by an order of court, but in the form of an official certificate duly signed by the judge at the end of such documents.

APPEAL—ALLEGATIONS—EXCEPTIONS—NEW TRIAL.—There is no legal provision to prevent an action from being based upon an account of which a promissory note constitutes the first item, but even if the complaint were demurrable on that ground the demurrer -must be filed in due time before the trial court and the question cannot be raised on appeal as a ground for the granting of a new trial.

ID.—PRESCRIPTION—EVIDENCE.—Where it is desired to allege prescription as 'a defense it must be expressly alleged either by way of demurrer or in the answer to the complaint, but this defense cannot be made use of as an objection to the admission of evidence, nor. can such objections be raised for the first . time on appeal, but must be deemed to have been waived where they are not raised in the inferior court.

ID.—CAUSE OF ACTION—LIQUIDATION OF PARTNERSHIP AND ADJUDICATION IN PAYMENT OF INTEREST THEREIN.—Where a partnership is liquidated and the adjudication is made of certain obligations existing in favor of the partnership to one of the partners in payment of his interest in the assets of the partnership, such partner has full capacity to proceed to collect and judicially demand compliance therewith.

ID.—ADMISSION OF IRRELEVANT EVIDENCE.—Where a trial is held before a court without the intervention of a jury the admission of important evidence can hardly be considered as a fundamental error, because it is to be presumed that in the decision of the case the judge has considered the pertinent evidence, and disregarded that· which was irrelevant and it must be clearly shown that the admission of the evidence may have prejudiced the interests of a party to the action in order to warrant the reversal of the judgment.

ID.—CONFLICTING EVIDENCE.—It is the province of the trial court to weigh the evidence, and where the evidence is conflicting the trial court must harmonize the conflict, and a judgment will not be reversed unless the appellate court, upon an examination of the evidence, finds that there is absolutely no evidence to justify the judgment.

The facts are stated in the opinion.

*Mr. Manuel F. Rossy* for appellant.

*Mr. Freyre Barbosa* for respondent.

MR. JUSTICE MACLEARY delivered the opinion of the court.

This is an action brought for the recovery of money. The complaint was filed on the 19th of November, 1904, setting out the indebtedness of defendant to the plaintiff, and praying judgment for $700.94 for interest and costs.

In due time an answer was filed alleging that plaintiff's claim amounted to $730.94, and denying that the debt reached any such sum, and denying also the authenticity of the promissory note on which the suit was partly based. This error in amount arose from a failure to observe a credit which had been made on the account as stated.

The plaintiff presented with his complaint a promissory note for $916.18, and an account of which the first item is the said note, and showing a balance on the 14th of January, 1904, of $700.94; being $730.94 less a credit of $30 on account of coffee delivered.

On the refusal of the court to admit the promissory note the plaintiff presented an account, including many items, and running from the 15th of April, 1889, to the 17th of February, 1897, and showing a balance on the last named date of $916.18, the amount of the note.

On trial the following testimony was taken on both sides:

"Luis Feliú testified that he was connected with two commercial establishments in Bayamón, the partners being Luis and Mariano Feliú, until the year 1903, when they separated, and he formed a partnership with Da. Francisca Munich; that Narváez ran an account with the first firm and that the same amounted to $700 on the dissolution of the said firm; that Narváez made a promissory note for that amount, which was signed on his request by a barber by the name of Tolmo, there being present the witness, his partner and the barber and Narváez, the asset being transferred to the new firm; that Tolmo recognized the note, and that the same was signed in 1897; that Narváez continued to run an account, buying provisions and sending coffee to the store; that receipts were given for such coffee; that the firm of L. Feliú & Co., was dissolved in 1903, and that the document was signed in 1897, and that the defendant continued to take what he needed at the store and to make payments on account; that the liquidation of the account and the signing of the document took place

in accordance with a custom of the business to liquidate all accounts each year and make documents; that this was not done in the case of the defendant because he kept making small payments and extending the account current; that 1 per cent interest was charged on the account.

"The witness Ventura Tolmo testified that the note was made at a time when he went to the store to shave his customers, and Narváez not knowing how to sign Don Luis asked Narváez if he wished witness to sign for him, he replying in the affirmative, witness signed for him; witness read the document at the time of signing same, and testified that he has never signed any other document in favor of Feliú since that time for persons who did not know how to sign; that Narváez, Luis and Mariano Feliú were present when the document was signed; that Narváez knew the amount which was stated in the document; that Narváez does not know how to read, and for that reason the document was read to him and on being asked if he was satisfied in regard to the amount specified in the document, Narváez replied in the affirmative.

"The witness Carlos Valdejuli testified that in November of the year last passed Mariano Feliú gave him a letter in order that he should go to Narváez to collect an amount of money; and that Narváez, whom he knew for the first time on that occasion stated that he could not settle the account then, but on the 15th he would go to town to settle the account with Don Mariano; that he knows nothing about the document, and is uninformed as to whether or not Narváez can read or write; that Feliú told him he could reduce the account about a hundred dollars to obtain a settlement, and that he does not know the amount of the account.

"The plaintiff introduced in evidence the promissory note and the account current, the defendant objecting, and the court refused to admit the account on the ground that the same was not sworn to by the person who made the same.

"The plaintiff also introduced as evidence the instrument of dissolution of the firm L. Feliú & Co., by which he was charged with the liquidation of the assets. The said instrument was accepted as evidence by the defendant.

"Lucas Narváez in testifying did not recognize the promissory note, and does not know Ventura Tolmo, and he had not authorized him to sign said note for him; that Feliú had not sent him any account, and did not send for him to liquidate; that he bought from the Feliú and paid them with coffee, and balanced his account; that

it has been many years since he has left his house, and that his son Julián is the one who makes purchases for him; that they gave him no receipts when he paid in coffee; that he settled up, but that it was four years before the cyclone, and since that time he continued buying and delivering produce to the plaintiff.

"Julián Narváez testified that he can read and write, and signs for his father when he requires him to do so, and that it is his duty to do the purchasing and bring in the produce; that Feliú never spoke to him about any document to be signed; that his father ran an account at the store of Feliú, but that this was before the cyclone.

"The defendant introduced a report of the expert bookkeeper Volkers to the effect that he examined an account between Narváez and Feliú Hermanos & Co., running from the 15th of April to July 1, 1892, and with Messrs. L. Feliú & Co., from August 24 to the 17th of February, 1897. That said account dated the 27th of December, 1905, purports to have been taken from the books of the said firm by Mariano Feliú as liquidator of the firm of L. Feliú & Co., that the examination disclosed that the account of Lucas Narváez does not appear in the ledger of the journal of L. Feliú & Co., corresponding to the years 1892 to 1897; that the account was copied with various changes and balances from some books not authorized by the court; that in said books there appears an account with Lucas Narváez, and from them it appears that the extract of the account was taken; after setting out in the report various figures and facts the same concludes by stating that the account taken from the so-called auxiliary books is not the same as the copy, and the balance is also different, the books showing a balance of $961.17 and the account $916.18; that the expert having been called upon to compare the amount shown on the journal and ledger with a promissory note executed by Lucas Narváez on the 17th of July, 1897, for $916.18, in favor of L. Feliú & Co., he found no entry referring to said note, nor to the amount thereof, and that the balance shown on the auxiliary books was $916.17.

"The expert of the plaintiff, Pedro Curet, was given the account referred to, and he testified that there is no cash book, but in the ledger there is a cash account, and that on examining the said cash account in connection with the auxiliary books 8 and 9 which relate to the account with Narváez various entries were shown, and these he sets out in full, and states that the result of August 24 was the same in the book and in the account, but the different entries were not the same; that on the 24th of August, 1892, the same entries appear in the book and in the account, but the account says for mer-

chandise and the book says for interest; that on March 8, 1893, the items are bound to show the same difference; that on March 29, 1894, the account says, cash, $25; merchandise, $4.50; $29.50 in all, and the book says $25 cash and $4.50 interest; and the same differences are shown on down through the different years, and in 1894 there appears an item of $230 charged to debit, and by the said amount in lead pencil there is a P, which indicates that the amount has been paid; that in 1895 there are other entries, one for $107.70 and one for $200 and one for $2.60, the two former being cash and the latter merchandise; that among the different books there are a ledger, and a journal which is not authorized by the court, and in the ledger there is no account with Lucas Narváez; the expert also testified that the amount of $230 is not charged twice, it having been charged both to debit and credit, one of which was written by the side the letter P, which means that the same has been paid.

"The expert Volkers testified that he had made his examination by comparing the account with the journal, the ledger and the auxiliaries; that the ledger is a resume of the journal, and the auxiliary books are allowed in commercial houses when authorized by the judge; that the cash book is for cash entries, etc.; that the two principal books were well kept, but the auxiliary books were badly kept, and do not correspond with the former either partially or totally, because neither the account of Narváez nor the obligation referred to in the account of Narváez, nor the interest entries nor the merchandise appear in the principal books; that the written report is ratified in all its parts; that the date 1904 is an error and should be 1894. On being asked by the judge if there existed any difference between the current account and the books, the witness replied that there was, the balance in the books of most importance being in favor of Lucas Narváez. The court having shown the expert that the complaint was for the collection of $700 and that together with the complaint there was filed an account the first entry of which was $916, and that it afterwards appears from the itemized account that there is a balance of $700.94 the expert replied that the said balance was shown because $30 were credited which should have been deducted; the court having stated also to the expert that the sworn account continued up to the year 1897, and that there was another account on which the complaint is based which begins on the 17th of February, 1897, and ends on the 14th of February, 1904, the expert replied that this was so, and that the last account agrees with the auxiliary books, and he having presented his sworn statement before examining the same."

The District Court approved the statement of facts and the statement of the case by a resolution on the 27th of September, 1906. (See page 20 of the record.) This is not a proper practice. These documents, like bills of exception, should, when approved, be signed officially by the trial judge.

The court also on the 29th of September, 1906, denied the motion for a new trial. (See record pp. 20 and 21.)

On the 21st of December, 1905, the court rendered final judgment against the defendant for $700.94, interest and costs. (See page 21 of the record.)

On the 10th of October, 1906, the defendant appealed from the order refusing the new trial. (See page 22 of the record.)

The transcript of the record, certified to by the attorney for the appellant was filed in this court on the 15th of November, 1906.

The appeal is taken solely from the order overruling the motion for a new trial; the appeal which seems to have been at first comtemplated to be taken from the judgment itself, appearing from the record to have been abandoned.

Both parties filed briefs in this court, and on the oral hearing made arguments citing authorities. The case was submitted on the 20th of December, 1906; the appellant being granted permission to file a memorandum in addition to his brief. The case was taken under advisement by the court and carefully considered. Counsel for appellant contends that the motion for a new trial should have been granted for the following reasons:

"First. For defects appearing in the complaint itself as it was presented in its original form.

"Second. Because the proof taken in connection with the complaint shows clearly:

"*a.* That there is no cause of action;

"*b.* That there is a defect of parties; first, because the plaintiff has no capacity to sue in this case; second, he should not have sustained his action according to the proofs, not being interested in the case."

The first objection—that is to say, the one made to the complaint, is because the action is brought on an account of which a promissory note comprises the first item. There is nothing in our Code of Procedure which would prevent this being done. But if the exception were a good one it should have been presented in due time to the trial court, and comes too late when offered in this court for the first time. As the case stands here the complaint must be considered as sufficient.

The second point made in favor of the appellant is that the promissory note should not have been admitted in evidence because it was barred by the statute of limitations. The statute cannot be used as a defense in this manner. It must be specially pleaded either by way of demurrer or answer, and if it is not so set up the defendant is presumed to have waived it. Some men have a very great prejudice against availing themselves of this defense, and question the morality of such an action. We do not concur with such views, but the law requires that the defendant must set up the statute of limitations in his pleadings if he chooses to avail himself of its defense, and cannot use it as an objection to evidence.

The other objection to the admissibility of the promissory note that the maker denied the execution of it is likewise futile as the preponderance of the evidence is in favor of the same having been signed by his authority.

The third objection, being the one to the account sued on, is also based partly on the statute of limitations, and the same remarks as those made above in regard to the promissory note will apply to the account. In so far as it is based on the provisions of the code of commerce, we will say that they do not apply here, for the reason that the items were proved independently of the books of account by the testimony of the witnesses. Besides these objections were not made on the trial in the court below, and at the proper time.

The fourth point made that the books themselves were the best evidence and should have been produced on the trial

might have been a good one if made on the trial when the accounts were offered; but not having been so made must be deemed to have been waived.

The fifth point made by appellant's counsel is that the plaintiff has not shown any right whatever to bring this suit. To this it can be easily replied that on the settlement of the business of the firm, this claim fell to his share and he had a right to sue on it and collect it in his own name. No better right could have been shown in any other manner.

The sixth error complained of is not a material one, and as the case was tried solely by the court could not have prejudiced the case of the appellant. And generally it may be said that when the judge tries a case without the intervention of a jury the admission of evidence will seldom be considered as a material error; since the court after admitting all the evidence is presumed to sift that which is pertinent from that which is immaterial or irrelevant and discard the latter in making up his judgment. The materiality of such errors must be plainly shown to justify a reversal of a judgment.

The seventh and last reason given by the appellant why the district court should have granted a new trial is that the testimony is entirely contradictory and by no means sufficiently conclusive to conform to the doctrine that he who desires to sustain an action has the burden of proof. It was the province of the trial judge to weigh the evidence, and to reconcile any contradictions which might be found in the testimony presented; and unless this court on reviewing the same finds a total lack of evidence the judgment cannot be reversed. It seems to us that the court was justified in arriving at the conclusions reached and that substantial justice has been attained in the result. The defendant owed the plaintiff money for goods sold and delivered. The amount was in dispute; the trial court has heard the witnesses and has passed on their testimony, and after due deliberation has arrived at a judgment. Nothing has been presented to us on this appeal to shake the confidence properly reposed in the judgments of

trial .courts. From a full consideration of all the points presented, we conclude that the judgment should be affirmed.

*Affirmed.*

Chief Justice Quiñones and Justices Hernández and Figueras concurred.

Mr. Justice Wolf did not take part in the decision of this case.